**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**DIONICIA UREÑA,**

                        **Plaintiff,**

      **- against –**

**LAWRENCE J. SILBERMAN, P.C.,**
**LAWRENCE SILBERMAN,**
**EDGECOMBE/ST. NICHOLAS, LLC,**
**LIVINGSTON MANAGEMENT SERVICES,**

                    **Defendants.**

**Case No.** cv-18-3032

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Dionicia Ureña by her attorneys, Mobilization for Justice, Inc. (formerly MFY Legal Services, Inc.) ("MFJ"), as and for her complaint against the Defendants Lawrence J. Silberman, P.C., Lawrence Silberman, Edgecombe/St. Nicholas, LLC, and Livingston Management Services, alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      This is an action for actual and statutory damages and injunctive relief, based on violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (FDCPA), N.Y. Gen. Bus. Law § 349 (NY GBL § 349), NYC Admin. Code § 27-2004 (Tenant Harassment Law), NYC Admin. Code § 8-107(5) (New York City Human Rights Law), and NY Judiciary Law § 487.  Defendants violated these laws by sending false and misleading rent demands to Plaintiff, a false and misleading letter, and filing repeated false and misleading petitions in housing court for nonpayment of rent with the intent to harass Plaintiff.

2.      Between 2013 and 2017, Defendants brought five nonpayment proceedings against Ms. Ureña for arrears that she did not owe, despite the fact that she has always paid her portion of the rent since the beginning of her tenancy over 25 years ago. In all five proceedings, Defendants have illegally sought portions of the rent that, if they were owed at all, were owed by the New York City Housing Authority (NYCHA) Section 8 Voucher Program. Defendants brought the final two actions after signing stipulations acknowledging that Ms. Ureña is a NYCHA Section 8 recipient and agreeing to adjust the rent ledger to reflect a zero dollar balance. In the second stipulation, Defendants additionally acknowledged that the case had been brought in violation of a prior stipulation and provided Ms. Ureña with a $1,000 rent credit. Nonetheless, a mere three months later, Defendants brought another nonpayment action seeking moneys from Ms. Ureña for rent allegedly owed by NYCHA Section 8, as well as her portion of the rent, which was covered by the $1,000 credit.

3.      Defendants have also failed to comply with the pleading and notice requirements of the Williams Consent Judgment (explained below), which is designed to prevent NYCHA Section 8 recipients, like Ms. Ureña, from being evicted due to rent that is the responsibility of NYCHA.

4.      Defendants have repeatedly harassed Ms. Ureña due to the fact that she is a rent-stabilized tenant and Section 8 recipient in a building located in a rapidly gentrifying neighborhood in Upper Manhattan. Indeed, Defendant Livingston Management, LLC sent Ms. Ureña a letter blatantly informing her that it no longer wished to have Section 8 recipients as tenants.

5.      This sort of harassment is all too common in today's housing climate where landlords and real estate management companies are eager to turn New York City's rapidly dwindling affordable housing stock into lucrative investment opportunities at the expense of law-abiding low-income New Yorkers.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) because this dispute involves predominant issues of federal law.

7.      The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state and local law claims because they are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution.

8.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all of the Defendants reside in this judicial district and because all or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

9.      Plaintiff Dionicia Ureña ("Plaintiff" or "Ms. Ureña") is an adult individual residing in the City, County, and State of New York.

10.     Ms. Ureña is a "consumer" under the definition of 15 U.S.C. § 1692e(3).

11.     Defendant Lawrence J. Silberman, P.C. ("Silberman Law Firm"), is a law firm that maintains its principal place of business at 146 E. 37th St, New York, NY 10016. Silberman Law Firm is a "debt collector" as that term is defined under § 15 U.S.C.

3

1692a(6) because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, using the instrumentalities of interstate commerce; and/or because its principle purpose is collection of "debts owed or due or asserted to be owed or due another."

12.    Lawrence Silberman ("Silberman") is a "debt collector" as that term is defined under § 15 U.S.C. 1692a(6) because he regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, using the instrumentalities of interstate commerce; and/or because its principle purpose is collection of "debts owed or due or asserted to be owed or due another."

13.    Edgecombe/St. Nicholas, LLC ("Edgecombe"), a New York Limited Liability Corporation, is the owner and holder of title of the building in which Ms. Ureña resides. Edgecombe's address, as listed on the multiple dwelling registration on file with the New York City Department of Housing Preservation and Development ("HPD"), is 225 West 35th Street, 1500, New York, NY 10001. According to information on the New York City Department of Finance, Office of the City Register's Automated City Register Information System, Edgecombe purchased the building in 2012.  Jonathan Bakhash is the managing agent of Edgecombe. HPD lists Marlena Demenus as the Head Officer of Edgecombe. Upon information and belief, Marlena Demenus is also the Founder and CEO of Sky Lake, LLC, which lists the subject premises as one of its properties on its website. The website also states "Sky Lake is hyper-focused on identifying and executing compelling investment opportunities in Northern Manhattan and the Bronx, markets that are in the path of growth and gentrification."

4

14.     Defendant Livingston Management Services ("Livingston Management"), located at 225 West 35th Street, 1500, New York, NY 10001, is listed as the managing agent on the multiple dwelling registration of the subject building.  Upon information and belief, Jonathan Bakhash is the president of Livingston Management.  Piazza Della Edgecombe Associates is a corporate owner of at least seven Livingston Management properties.

## STATUTORY AND REGULATORY CONTEXT

15.     Prior to the commencement of any eviction proceeding brought against a tenant receiving Section 8 funding from NYCHA, the landlord petitioner must comply with the Second Partial Consent Judgment established in the case *Williams v New York Hous. Auth.*, 81 CIV. 1801 (RJW), 1994 WL 323634 (S.D.N.Y. July 5, 1994) *mod sub nom. Williams v New York City Hous. Auth.*, 81 CIV. 1801 (RJW), 1994 WL 533572 (S.D.N.Y. Sept. 29, 1994), *see* Appendix 19-1, Second Partial Consent Judgment ("Williams Consent Judgment").

16.     The Williams Consent Judgment requires a landlord receiving Section 8 funds to adhere to certain procedures when commencing any eviction proceeding against a Section 8 tenant.  Williams Consent Judgment ¶ 3.  "Good cause" for eviction is a necessary element in all eviction proceedings against NYCHA Section 8 voucher recipients. *Id.* at ¶ 4.

17.     A landlord may bring an eviction proceeding only after having complied with the procedures set forth in the Consent Judgment regarding certifying the basis for eviction. *Id*. at ¶ 6.

18.     The Williams Consent Judgment requires that prior to the commencement of any eviction proceeding, the landlord must provide a certification to the tenant and NYCHA

of its intent to commence an eviction proceeding at least 25 days prior to the commencement of the proceeding. *Id.* at ¶ 4.  The certification must include:

    a.     "factual allegations with sufficient specificity to enable the tenant to prepare a response or defense;

    b.     for proposed non-payment proceedings, the total amount of rent owed and an accurate breakdown of the source of the arrearage, indicating the total amount claimed from the Authority, if any, for each month at issue, and the total amount claimed from the tenant for each month at issue; and

    c.     a certification that the landlord will not commence a nonpayment proceeding against a Section 8 tenant for the housing assistance payment (the subsidy portion of the rent). The copy of the form delivered or mailed to the Authority shall also include proof that a copy of the Certification was delivered or mailed to the tenant."

19.    NYCHA examines each certification and objects where:

    a.     "The landlord fails to state specific factual allegations regarding the basis for the eviction proceeding;

    b.     The stated facts, if proved, would fail to set forth good cause to evict;

    c.     The proposed nonpayment proceeding seeks to recover from the tenant more than the share of rent for which the tenant is responsible; or

    d.     The landlord has failed to comply with Section 8 procedures applicable to the tenant and unit at issue in the eviction proceeding, including those set forth in this Consent Judgment; or

e.      The landlord is seeking to withdraw the tenant's unit from the Section 8 program, where such withdrawal would violate any provision of federal, state or local law." *Id*. at ¶ 8.

20.      When NYCHA objects to a certification, it communicates its reasons for objection in an "Exhibit B" letter, entitled "New York City Housing Authority's Reply to Notice of Intention to Commence Eviction Proceedings." *Id*. at ¶ 9

21.      The Consent Judgment explicitly states that a Section 8 landlord shall not maintain a proceeding that seeks a judgment against the tenant for the subsidy portion of the rent against a Section 8 tenant. *Id.* at ¶ 10.

22.      Where NYCHA objects to the landlord's certification, the landlord must name and serve NYCHA as a necessary party to the proceeding. *Id.* at ¶ 12. The failure to name and serve the Authority as a party shall require dismissal of the proceeding without prejudice. *Id.*

23.      When a landlord commences an eviction proceeding based solely on nonpayment, in whole or in part, of the subsidy portion of the rent, or after having failed to notify, or failed to timely notify NYCHA of its intention to commence an eviction proceeding, NYCHA is a necessary party to the proceeding. The failure to join NYCHA as a party requires dismissal of the proceeding, without prejudice. *Id.* at ¶ 14.

24.      When certification is required under the William Consent Judgment, a landlord may not commence an eviction proceeding earlier than 25 days after in-hand delivery of the certification to NYCHA, or earlier than 30 days if delivered by mail. *Id.* at ¶ 15.

25.      Where certification is required by the Williams Consent Judgment, the landlord must include in the petition:

a.      "That the Authority and the tenant have been given notice of the landlord's

intention to commence the eviction proceeding;

b.      The reason for eviction given by the landlord to the Authority;

c.      That the Authority either accepted or objected to the Certification, or

failed to respond within the applicable period of time set forth in ¶15 of this

Consent Judgment; and

d.      That the landlord does not seek to recover from the tenant the subsidy

portion of the rent." *Id.* at ¶ 16.

26.     When NYCHA discovers that a landlord has commenced a proceeding or issued a

three-day notice without following the procedures prescribed by the Consent Judgment,

NYCHA will send an "Exhibit C" letter to the landlord, tenant, and housing court,

informing them that the landlord is proceeding improperly. *Id.* at ¶ 17.

27.     The court in *Williams* stated that in approving the Consent Judgment, it had

"attempted to ensure . . . that plaintiff-tenants would not be evicted from their Section 8

apartments due to disputes between NYCHA and their landlords." *Id*. (internal citations

omitted). 1994 WL 533572, at *1.

28.     One of the primary purposes of the Williams Consent Judgment is to provide

tenants sufficient time to formulate a response to allegations of nonpayment of rent.

29.     A landlord's failure to properly follow the procedures of the Williams Consent

Judgment requires dismissal.

30.     Plaintiff's counsel reviewed the court files for the eight most recent nonpayment

cases commenced by the Silberman Law Firm in New York County Housing Court that

were available.  Three of these eight court files (Index Numbers: 69701-17/NY, 76518-

17/NY, and 63998-17/NY) include a reference to Section 8 in a court order or stipulation. However, Section 8 is not mentioned in any of the pleadings, and NYCHA is not named as a party, indicating a lack of compliance with the Williams Consent Judgment in these cases.

## FACTS

31. Ms. Ureña is a Dominican immigrant and speaks only Spanish. She has depression, and her sole source of income is Social Security Disability Insurance.

32. Ms. Ureña is a tenant of the premises known as 606 Saint Nicholas Ave, Apt 1, New York, NY 10030, where she has lived since 1991.

33. Plaintiff's tenancy in the apartment is governed by, and is subject to, the New York City Rent and Evictions Regulations (the "New York City Rent Stabilization Law").

34. Since 1994, Ms. Ureña has received a Section 8 voucher from the New York City Housing Authority (NYCHA), which currently caps her portion of the rent at $226 per month.

35. Section 8, or the Housing Choice Voucher program, is a federally funded rent subsidy program for low-income individuals and families.  Funds for the Section 8 program are provided by the United States Department of Housing and Urban Development to local Public Housing Authorities, which administer the program locally and tender the subsidy amount directly to the landlord pursuant to a Housing Assistance Payment contract.

36. Under the Housing Choice Voucher program, Ms. Ureña's portion of the rent cannot exceed her apportioned amount, which is capped at 30% of her income, and the remainder of the rent is reimbursed to the landlord by NYCHA.

37.    NYCHA informs Ms. Ureña by mail when her portion of the rent changes.

38.    During her entire tenancy, Ms. Ureña has consistently paid her portion of the rent.

39.    Defendant Livingston Management, according to its website, manages 58 properties. Upon information and belief, at least two of these properties, including the subject building at 606 Saint Nicholas Ave, are owned by Defendant Edgecombe. Defendant Edgecombe has brought 21 nonpayment cases in New York County Housing Court, according to a review of publicly available court records.

40.    In 2017 alone, Defendant Silberman Law Firm commenced over 100 nonpayment cases in New York County, according to a review of publicly available court records. Defendant Silberman Law Firm brought 33 of these nonpayment cases on behalf of Piazza Della Edgecombe Associates, a corporate owner of at least seven Livingston Management properties.

**Defendants' Baseless Lawsuits**

41.    Between 2013 and 2017, Defendants commenced five baseless lawsuits against Ms. Ureña, in violation of the Williams Consent Judgment, which sought to evict her from her home for nonpayment of rent, despite the fact that Ms. Ureña had paid her entire portion of the rent and the amounts that Defendants sought were in fact for NYCHA's portion of the rent. MFJ represented Ms. Ureña in the four cases that were filed between 2015 and 2017.

*Case 1*

42.    In 2013, the Silberman Law Firm sent Ms. Ureña a "three-day notice," which is a prerequisite to bringing a nonpayment case in housing court, dated November 13, 2013.

43. The notice was signed on behalf of Edgecombe by Jonathan Bakhash, managing agent, and claimed that Ms. Ureña owed Edgecombe $2,705.68 in rent.

44. The notice stated that Ms. Ureña was required to pay arrears within three days of November 25, 2013, or give up possession of the premises. In addition, it stated that if Ms. Ureña failed to pay or give up the premises, the landlord would commence summary proceedings against her to recover possession of the premises.

45. On or around December 3, 2013, the Silberman Law Firm on behalf of Edgecombe filed a nonpayment petition, captioned Edgecombe St. Nicholas v. Donicia [sic] Ureña LT 89673-13/NY, seeking the same amount claimed in the three-day notice.

46. Silberman verified the December 3, 2013 petition.

47. Ms. Ureña did not owe any arrears.

48. Both the three-day notice and the petition's breakdown of the arrears allegedly owed did not include the amount of tenant's share owed by month and year, but instead included an amount derived merely by dividing the total amount of alleged arrears by the base rent for the apartment, and alleging that amount was due for the most recent months prior to the notice.

49. The petition alleged that Ms. Ureña owed the entire base rent for the two most recent months prior to the notice, with a balance for the previous month, plus legal fees.

50. On December 23, 2013, the action was adjourned to January 31, 2014 on consent by both parties.

51. On January 31, 2014, the Silberman Law Firm failed to appear at the hearing on behalf of Edgecombe and the petition was dismissed.

52. On February 5, 2014, Edgecombe moved to restore the case to the calendar.

11

53.    On February 21, 2013, Edgecombe's motion was withdrawn without prejudice by stipulation. The stipulation was signed by Silberman and Ms. Ureña's attorney.

*Case 2*

54.    In January 2015, the Silberman Law Firm sent Ms. Ureña a three-day notice, dated January 21, 2015.

55.    The notice was signed on behalf of Edgecombe by Jonathan Bakhash, managing agent, and claimed that Ms. Ureña owed Edgecombe $3,559.83 in rent arrears.

56.    The notice stated that Ms. Ureña was required to pay arrears within three days of February 15, 2015, or give up possession of the premises. In addition, it stated that if Ms. Ureña failed to pay or give up the premises, the landlord would commence summary proceedings against her to recover possession of the premises.

57.    On or around February 17, 2015, the Silberman Law Firm on behalf of Edgecombe filed a nonpayment petition captioned Edgecombe St. Nicholas, LLC v. Donicia [sic] Ureña LT-054998-15/NY, seeking the same amount claimed in the three-day notice.

58.    Silberman verified the February 17, 2015 petition.

59.    Ms. Ureña did not owe any arrears.

60.    Both the three-day notice and the petition's breakdown of the arrears allegedly owed did not include the amount of tenant's share owed by month and year, but instead included an amount derived merely by dividing the total amount of alleged arrears by the base rent for the apartment, and alleging that amount was due for the most recent months prior to the notice.

61.    The petition alleged that Ms. Ureña owed the entire base rent for the three most

recent months prior to the notice, with a balance for the previous month, plus legal fees.

62.     On March 2, 2015, Ms. Ureña filed a *pro se* answer, disputing the amount of arrears.  She subsequently retained counsel.

63.     On March 11, 2015, the Silberman Law Firm on behalf of Edgecombe stipulated with Ms. Ureña's attorneys on behalf of Ms. Ureña to accept an amended answer raising Edgecombe's failure to comply with the Williams Consent Judgment.

64.     On March 28, 2015, Ms. Ureña's attorneys sent NYCHA a request for an "Exhibit C" letter by certified mail.

65.     On June 17, 2015, Silberman emailed Ms. Ureña's attorney a copy of the ledger maintained by Livingston Management. The ledger explicitly included payments made by NYCHA Section 8 and by Ms. Ureña.

66.     In addition, the ledger clearly indicated that at least a portion of the alleged arrears was owed by NYCHA.

67.     NYCHA issued an "Exhibit C" letter to Silberman, dated August 3, 2015, informing him that the action was subject to dismissal based on Edgecombe's failure to comply with the Williams Consent Judgment, including:

   a.  Failing to certify to the tenant and Housing Authority that the grounds for the proceeding constitute a lawful basis for the eviction of a Section 8 tenant-participant;

   b.  Not providing the Housing Authority with a copy of the Notice of Petition and Petition;

   c.  Failing to plead the tenant's Section 8 status;

   d.  Failing to join the Housing Authority to the Proceeding; and

13

    e. Seeking a judgment against the tenant for the Section 8 subsidy portion of the rent.

68. On August 19, 2015 the case was discontinued without prejudice.

*Case 3*

69. In September 2015, the Silberman Law Firm sent Ms. Ureña a three-day notice, dated September 23, 2015.

70. The notice was signed on behalf of Edgecombe by Jonathan Bakhash, managing agent, and claimed that Ms. Ureña owed Edgecombe $6,316.75 in rent arrears.

71. The notice stated that Ms. Ureña was required to pay arrears within three days of October 9, 2015, or give up possession of the premises. In addition, it stated that if Ms. Ureña failed to pay or give up the premises, the landlord would commence summary proceedings against her to recover possession of the premises.

72. On or around October 12, 2015, the Silberman Law Firm on behalf of Edgecombe filed a nonpayment petition captioned Edgecombe St. Nicholas, LLC v. Donicia [sic] Ureña LT-80565-15/NY seeking the same amount claimed in the three-day notice.

73. Silberman verified the October 12, 2015 petition.

74. Ms. Ureña did not owe any arrears.

75. Both the three-day notice and the petition's breakdown of the arrears allegedly owed did not include the amount of tenant's share owed by month and year, but instead included an amount derived merely by dividing the total amount of alleged arrears by *NYCHA's portion of the rent* and major capital improvement fees, for which NYCHA is also responsible, and alleging that amount was due for the most recent months prior to the notice.

14

76.    The petition alleged that Ms. Ureña owed NYCHA's portion of the rent for the six most recent months prior to the notice, with a balance for the previous month, plus major capital improvement fees for the seven most recent months prior to the notice, and legal fees.

77.    On October 26, 2015, Ms. Ureña filed a *pro se* answer.  She subsequently retained counsel.

78.    On December 23, 2015, Ms. Ureña's attorneys sent NYCHA a request for an "Exhibit C" letter by email.

79.    NYCHA issued an "Exhibit C" letter to Silberman, dated December 31, 2015, informing him that the action was subject to dismissal based on Edgecombe's failure to comply with the Williams Consent Judgment, including:

   a.  Failing to certify to the Housing Authority prior to the commencement of the action that the grounds for the proceeding constitute a lawful basis for the eviction of a Section 8 tenant-participant;

   b.  Failing to join the Housing Authority to the Proceeding;

   c.  Seeking a judgment against the tenant in excess of the tenant's share of the rent.

80.    On February 11, 2016, Ms. Ureña, through her attorneys, moved for leave to file an amended answer that included a counterclaim for sanctions for frivolous conduct under 22 NYCRR § 130-1.1.

81.    On February 25, 2016, the case was discontinued with prejudice by a stipulation of settlement so-ordered by Hon. Jack Stoller, that included the following terms:

   a.  Edgecombe agreed to adjust its records to reflect that Respondent had a zero

15

balance through February 28, 2016, subject to receipt and collection of February 2016 Section 8 payments; and

b.  the parties agreed that Ms. Ureña is a Section 8 NYCHA tenant whose share of rent was 241.00 per month.

*Case 4*

82.    In April 2016, the Silberman Law Firm sent Ms. Ureña a three-day notice, dated April 11, 2016.

83.    The notice was signed on behalf of Edgecombe by Jonathan Bakhash, managing agent, and claimed that Ms. Ureña owed Edgecombe $3,902.18 in rent arrears.

84.    Ms. Ureña did not owe any arrears.

85.    Both the three-day notice and the petition's breakdown of the arrears allegedly owed did not include the amount of tenant's share owed by month and year, but instead included an amount derived merely by dividing the total amount of alleged arrears by *NYCHA's portion of the rent* and major capital improvement fees, for which NYCHA is also responsible, and alleging that amount was due for the most recent months prior to the notice.

86.    The petition alleged that Ms. Ureña owed NYCHA's portion of the rent for the four most recent months prior to the notice, with a balance for the previous month, plus major capital improvement fees for the five most recent months prior to the notice, and legal fees.

87.    Edgecombe sent NYCHA a "Certification of Basis for Eviction Proceeding Against Tenant Participating in the Section 8 Housing Choice Voucher," dated April 11, 2016.  It was signed by Jonathan Bakhash as the landlord and by Silberman as the

landlord's attorney.

88.     NYCHA's copy of the Certification is stamped "Received" on April 25, 2016.

89.     On around April 29, 2016, NYCHA signed an "Exhibit B" letter objecting to Edgecombe's pre-petition certification because Edgecombe failed to comply with Section 8 procedures by failing to provide proof of mailing of the certification to the tenant and failing to "state the tenant share owed and months/yr."

90.     Ms. Ureña in fact never received a copy of the certification.

91.     By not sending Ms. Ureña the certification, Edgecombe failed to provide her with an "opportunity to formulate" an "approach" to the allegations, as required by the Williams Consent Judgment.

92.     On May 2, 2016, without waiting 30 days to receive NYCHA's response to Edgecombe's certification, the Silberman Law Firm, on behalf of Edgecombe, filed another nonpayment petition, captioned Edgecombe St. Nicholas, LLC v. Donicia [sic.] Ureña LT-63444-16/NY, seeking the same amount claimed in the three-day notice.

93.     NYCHA issued an "Exhibit C" letter to Silberman dated May 20, 2016, informing him that the action was subject to dismissal based on Edgecombe's failure to comply with the Williams Consent Judgment, including:

   a. Seeking monies in the petition in excess of the tenant share of rent; and

   b. Failing to plead that the tenant receives a Section 8 subsidy.

94.     On May 23, 2016, Ms. Ureña went to court and filed a *pro se* answer.  She subsequently retained counsel.

95.     On May 27, 2016, prior to the first court appearance of the case, Ms. Ureña's counsel sent a letter via email and certified mail to Edgecombe's attorney, Silberman,

17

bringing to his attention that:

    a.  It was at least the third improper attempt by Edgecombe to bring a nonpayment case against Ms. Ureña, a Section 8 voucher holder, for arrears she did not owe;

    b.  Edgecombe was again in violation of the Williams Consent Judgment, as it had been in the two previous cases in which MFJ had represented Ms. Ureña;

    c.  NYCHA had issued Exhibit B and C letters in the instant case;

    d.  By alleging arrears dating to months prior to February 2016 and for sums in excess of the tenant share of the rent, Edgecombe was also in violation of the February 25, 2016 Stipulation; and

    e.  Ms. Ureña considered the new proceeding to be harassment.

96.    Silberman did not reply to the letter.

97.    On May 31, 2016, Ms. Ureña's counsel appeared in court on her behalf and Silberman informed her that Edgecombe refused to withdraw the case.

98.    On July 12, 2016, Ms. Ureña's counsel moved for leave to file an amended answer that included counterclaims for sanctions for frivolous conduct under 22 NYCRR § 130-1.1, and harassment under NYC Admin. Code § 27-2005(d), and seeking summary judgment on the counterclaims.

99.    On November 10, 2016, Silberman emailed Ms. Ureña's counsel about settling Ms. Ureña's counterclaims for frivolous conduct and harassment. Silberman did not want to include a paragraph in the stipulation that stated the previous cases had been commenced in violation of the Williams Consent Judgment.

100.    By stipulation of settlement dated November 14, 2016 and so-ordered by Judge

Stoller, the case was discontinued with prejudice. The stipulation included the following terms:

a. "Respondent has a zero balance on her tenant share of the rent through November 30, 2016, and $1,000 credit on her tenant share of the rent thereafter.

b. Total monthly rent for the subject apartment is currently $1,065.86 (Legal Registered Rent of $1,005.53 plus $60.33 MCI).  Respondent is a New York City Housing Authority ("NYCHA") Section 8 voucher holder.  Her tenant share of the rent is currently $241 monthly.  NYCHA Section 8 currently pays $824.86 monthly.

c. Petitioner acknowledges receipt of a letter from NYCHA titled "Statement Regarding  Proceeding to Evict a Tenant-Participant in the Section 8 Existing Housing Program," ("Exhibit C" letter) in this case and in each of the prior two cases between the parties (NY L&T 54998/2015 and NY L&T 80656/2015).  This proceeding was commenced in error because it asserts arrears that were barred under prior stipulation between the parties dated February 25, 2016 in NY L&T 80656/2015 . . . ."

*Case 5*

101.   Less than three months later, the Silberman Law Firm sent Ms. Ureña another three-day notice, dated February 7, 2017.

102.   The notice was signed on behalf of Edgecombe by Jonathan Bakhash, managing agent, and claimed that Ms. Ureña owed Edgecombe $3,869.95 in rent arrears, including a "balance forward" of $2,916.23; rent of $226.68 for January and February 2017; and

legal fees of $500.

103.    The notice stated that Ms. Ureña was required to pay arrears within three days of February 21, 2017, or give up possession of the premises. In addition, it stated that if Ms. Ureña failed to pay or give up the premises, the landlord would commence summary proceedings against her to recover possession of the premises.

104.    On or around March 8, 2017, the Silberman Law Firm on behalf of Edgecombe filed a new nonpayment petition seeking the same amount claimed in the three-day notice.

105.    Silberman verified the March 8, 2017 petition.

106.    Despite the acknowledgments and admissions in the November 14, 2016 stipulation, the rent demand in the February 17, 2017 case listed a balance of $2,916.23 from unspecified months prior to January 2017, as well as alleged arrears for January and February 2017, which were months covered by Ms. Ureña's rent credit from the November 14, 2016 stipulation under Index No. LT-06344-16/NY.

107.    On March 28, 2017, MFJ sent a cease and desist letter to Silberman and the Silberman Law Firm, via U.S. certified mail and electronic mail, informing them that this was the fourth non-payment of rent case that the landlord, Silberman, and the Silberman Law Firm had commenced within a three-year period against Ms. Ureña, a NYCHA Section 8 voucher holder, for arrears she did not owe, and that each of the three previous cases had been discontinued after NYCHA issued "Exhibit C" letters confirming their failure to comply with the Williams Consent Judgment.

108.    The letter also stated that in the most recent of the three cases (Index No. LT-063444-16/NY), the case was discontinued with prejudice by stipulation of settlement,

dated November 16, 2016 and so-ordered by the Honorable Judge Stoller.

109.    The pleadings and predicate notice in this case, like its predecessors, failed to comply with the Williams Consent Judgment. Among other deficiencies, Edgecombe and Silberman again did not properly seek or receive certification from NYCHA, or provide an accurate breakdown of rent claimed from the tenant for each month at issue.

110.    Ms. Ureña's counsel informed Silberman that the proceeding and the allegations in it were actionable harassment and misconduct and demanded that Silberman on behalf of his client discontinue the proceeding, retract the rent demand, and that the landlord adjust its records to conform to the November 14, 2016 Stipulation.

111.    On March 28, 2017, Ms. Ureña through her attorneys filed an answer with counterclaims and MFJ appeared in court on Ms. Urena's behalf. At the hearing, MFJ and Silberman signed another stipulation with the following provisions:

    a.    The case was discontinued with prejudice;

    b.    Ms. Ureña was a NYCHA Section 8 voucher recipient;

    c.    Her current tenant share of the monthly rent had been $226 since December 1, 2016;

    d.    Pursuant to the prior stipulation between the parties under LT-63444-16/NY, Ms. Ureña had a zero balance on her tenant share of rent through November 30, 2016 and a $1,000 credit on her tenant share thereafter.

    e.    Therefore, Ms. Ureña would have a zero balance on her tenant share of rent through March 31, 2017 and a $96 credit on her tenant share thereafter.

112.    As a result of the five baseless, frivolous nonpayment eviction proceedings brought by Edgecombe, represented by the Silberman Law Firm, seeking arrears that she did not

owe, Ms. Ureña made numerous trips to housing court, and suffered severe stress, which aggravated her asthma. In addition, as a result of the five cases, Ms. Ureña experienced tremendous stress at the prospect of not being able to travel to the Dominican Republic to visit her brother, who was severely ill, because she feared missing court appearances and losing her home of over 25 years.

113.    During the pendency of the third case, Livingston Management sent Ms. Ureña a letter, dated February 19, 2016, which stated: "Please be advised that your lease expired on 11/30/2016 [sic] and Landlord, Pizza [sic] Della Edgecombe Associates, no longer accepts Section 8 recipients."

114.    The letter was signed by Stacey Bakhash on behalf of Livingston Management.

115.    After receiving the letter, Ms. Ureña experienced extreme anxiety about losing her apartment, which aggravated her asthma.

116.    On or around March 24, 2016, in response to a call from Ms. Ureña's daughter about the February 19, 2016 letter, Livingston Management sent Ms. Ureña a letter stating that the landlord withdrew its decision to "opt out" of the Section 8 voucher program.

## COUNT I

### Violations of the Fair Debt Collection Practices Act (FDCPA)
### (Against Defendants Silberman and Silberman Law Firm)

117.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

118.    The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State

22

action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

119.    Congress designed the FDCPA to be enforced primarily through private parties – such as Plaintiff – acting as "private attorneys general." S. Rep. No. 382, 95th Con., 1st Sess. 5 ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance").

120.    Ms. Ureña is a "consumer" as defined by 15 U.S.C. § 1692a(3) because she was alleged to owe a debt.

121.    The obligation alleged to be owed by Ms. Ureña is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was allegedly incurred primarily for family, personal or household purposes.

122.    Silberman and the Silberman Law Firm are "debt collector(s)" as defined in 15 U.S.C. § 1692a(6), which applies to "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Upon information and belief, Defendants Silberman and Silberman Law Firm send out hundreds, if not thousands, of rent demands and have filed numerous lawsuits against consumers who allegedly owe rental debts.

123.    The actions of Silberman and the Silberman Law Firm enumerated in the above statement of facts constitute attempts to collect a debt, or were taken in connection with attempts to collect a debt, within the meaning of the FDCPA.

124.    Silberman and the Silberman Law Firm materially violated the following sections of the FDCPA: 15 USC §§ 1692d, 1692e, and 1692f.  Silberman and the Silberman Law

Firm violated the FDCPA by taking several actions in an attempt to collect a debt or in connection with an attempt to collect a debt.

a.  By sending the February 7, 2017 rent demand that demanded payment of rent that was not in fact due and owing, Silberman and the Silberman Law Firm:

(1)  engaged in conduct the natural consequence of which is to harass, oppress or abuse a person in connection with the collection of a debt;

(2) used false, deceptive or misleading representations or means;

(3) misrepresented the character, amount or legal status of the alleged debt;

(4) misrepresented the services rendered or compensation which may be lawfully received;

(5) threatened to take and actually did take an action prohibited by law, or which is not intended to be taken, for the purpose of coercing Plaintiff to pay the alleged debt;

(6) misrepresented that they had meaningfully reviewed the rent demand; and

(7) used unfair or unconscionable means, including attempting to collect an amount not authorized by any agreement.

b.  By initiating the March 2017 summary proceeding, which had no legal basis because, among other reasons, it did not comply with Williams Consent Judgment and because it demanded payment of rent that was not in fact due and owing, Silberman and the Silberman Law Firm:

(1) engaged in conduct the natural consequence of which is to harass, oppress or abuse a person in connection with the collection of a debt;

(2) used false, deceptive or misleading representations or means;

(3) misrepresented the character, amount or legal status of the debt;

(4) misrepresented the services rendered or compensation which may be lawfully received;

(5) threatened to take and actually did take an action prohibited by law, or which is not intended to be taken, for the purpose of coercing Plaintiff to pay the alleged debt;

(6) misrepresented that they had meaningfully reviewed the petition; and

(7) used unfair or unconscionable means, including attempting to collect an amount not authorized by any agreement.

125.    As a result of the above violations of the FDCPA, Plaintiff suffered actual damages, including travel costs to housing court and emotional and physical distress caused by her fear of losing her home and rent-stabilized apartment of over 25 years, and is entitled to a judgment against Defendants for her actual and statutory damages in an amount to be determined by the trier of fact, as well as an award of her reasonable attorney's fees and costs pursuant to the FDCPA.

## COUNT II

### Violations of New York General Business Law Section 349, *et seq.*
### (Against All Defendants)

126.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

127.    NY GBL § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state . . . ."

128.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual

25

damages or fifty dollars, whichever is greater, or both such action." NY GBL § 349(h).

129.   In addition, "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff." *Id.*

130.   Defendants violated NY GBL § 349 by using deceptive acts and practices in the conduct of their businesses:

a.      Defendants sent Plaintiff four rent demands that contained false, misleading, and deceptive statements regarding the character, amount, or legal status of the alleged debt; the repercussions to Plaintiff of not paying the alleged debt; and Defendants' intentions should Plaintiff fail to pay the alleged debt;

b.      Defendants brought multiple nonpayment summary eviction proceedings against Plaintiff for rent that she did not owe, including rent allegedly owed by NYCHA;

c.      Defendants brought multiple nonpayment summary eviction proceedings against Plaintiff in direct violation of previous so-ordered court stipulations;

d.      Defendants brought multiple nonpayment summary eviction proceedings against Plaintiff despite the fact that  they had no legal basis for doing so, including, in part, because they had not complied with the Williams Consent Judgment; and

e.      Defendants informed Plaintiff that her lease would not be renewed because she received a Section 8 voucher, which was not true.

131.   Defendants' conduct has a broad impact on consumers at large. It potentially

impacts the thousands of consumers in the State of New York who, on information and belief, live in buildings owned or operated by Edgecombe, Livingston Management, and their affiliates, and/or are prosecuted in court by Silberman and the Silberman Law Firm.

132. Defendants committed the above-described acts willfully and/or knowingly.

133. Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff, and unless enjoined will cause further irreparable injury.

134. As a direct and proximate result of those violations of NY GBL § 349, Plaintiff has suffered actual damages, including travel costs to housing court and emotional and physical distress caused by her fear of losing her home and rent-stabilized apartment of over 25 years, and she is entitled to a judgment against Defendants for her actual and treble damages in an amount to be determined by the trier of fact, as well as injunctive relief, and an award of her reasonable attorney's fees and costs.

## COUNT III
## Violations of NYC Admin. Code § 27-2004(a)(48)(i),(ii)(d) ("Tenant Harassment Law")
### (Against Defendants Edgecombe and Livingston Management)

135. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

136. NYC Admin. Code § 27-2005(d) states that "the owner of a dwelling shall not harass any tenants or persons lawfully entitled to occupancy of such dwelling as set forth in paragraph 40 of subdivision of section 27-2004 of this chapter."

137. NYC Admin. Code § 27-2004(a)(48) defines harassment as, *inter alia*:

> . . . any act or omission by or on behalf of an owner that (i) causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy, and (ii) includes one or more of the following . . . (d) commencing repeated

27

baseless or frivolous court proceedings against any person lawfully entitled to occupancy of such dwelling unit . . . (g) other repeated acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace or quiet of any person lawfully entitled to occupancy of such dwelling unit and that cause or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy.

138. NYC Admin. Code § 27–2115(h) provides a private right of action based on a claim of tenant harassment, and § 27–2115(m)(2) provides for injunctive relief when a court of competent jurisdiction finds that conduct in violation of § 27-2005(d) occurred.

139. Defendants Edgecombe and Livingston Management have harassed Plaintiff in violation of NYC Admin. Code § 27-2004 (d) by:

a. Sending multiple three-day notices to Plaintiff for arrears that she did not owe, that Defendants had waived in previous stipulations, and that Defendants knew were owed by NYCHA and not Plaintiff;

b. bringing multiple nonpayment summary eviction proceedings against Plaintiff for rent that was not owed;

c. bringing multiple nonpayment summary eviction proceedings against Plaintiff despite signing prior so-ordered stipulations that the rent sought was not owed;

d. bringing multiple nonpayment summary eviction proceedings against Plaintiff seeking NYCHA Section 8 portions of the rent; and

e. illegally bringing multiple nonpayment summary eviction proceedings in violation of the Williams Consent Judgment.

140. Defendants Edgecombe and Livingston Management committed the above-described acts with the intent to induce Plaintiff to either surrender her rent-regulated

tenancy, which is highly commercially valuable, and/or to intimidate a Section 8 recipient into surrendering her apartment.

141.   Plaintiff is entitled to injunctive relief in the form of an order enjoining Defendants Edgecombe and Livingston Management from further violations of NYC Admin. Code § 27-2004(d).

**COUNT V**
**Violations of N.Y. Judiciary Law § 487**
**(Against Defendants Silberman and the Silberman Law Firm)**

142.   Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

143.   N.Y. Jud. Law § 487(1) states that:

> [a]n attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

144.   Defendants Silberman and the Silberman Law Firm intentionally deceived the court and/or Ms. Ureña by:

a.   verifying in five nonpayment petitions that Ms. Ureña owed arrears that their client's ledger clearly indicated were owed by NYCHA and not Ms. Ureña;

b.   verifying five nonpayment petitions that failed to comply with the Williams Consent Judgment;

c.   verifying a petition on May 2, 2016 seeking rent arrears that had been waived in a stipulation signed by Defendants approximately two months before; and

29

> d.      verifying a petition on March 8, 2017, seeking rent arrears that Defendants had waived in a stipulation signed by Defendants approximately three months before, which included an admission that the previous cases were brought "in error," and that included a $1,000 credit that covered the months Defendants were suing for.

145.    As a result of these violations, Plaintiff suffered actual damages, including travel costs to housing court and emotional distress.

**COUNT VI**
**Violations of NYC Admin. Code § 8-107(5)(NYC Human Rights Law)**
**(Against Defendants Edgecombe and Livingston Management)**

146.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

147.    The New York City Human Rights Law prohibits discrimination in housing accommodations, which are defined as "any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings." NYC Admin. Code § 8-102(10). The subject building located at 606 Saint Nicholas Ave falls squarely within this definition.

148.    Defendant Edgecombe is the owner of the subject housing accommodation, and Defendant Livingston is the managing agent. Accordingly, both are subject to the NYC Human Rights law. NYC Admin. Code § 8-107(5)(a).

149.    The NYC Human Rights Law prohibits discrimination against members of certain protected classes, including lawful source of income. NYC Admin. Code § 8-107(5)(a)(1). "Lawful source of income" is explicitly defined to include Section 8 vouchers. NYC Admin. Code § 8-102(25)

150.    NYC Admin. Code § 8-107(5)(a)(1) provides that it shall be unlawful discriminatory practice for owners and managing agents to engage in the following discriminatory behavior based on a person's lawful source of income:

> (a) To refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any such person or group of persons such a housing accommodation or an interest therein;
> (b) To discriminate against any such person or persons in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith; or
> (c) To represent to such person or persons that any housing accommodation or an interest therein is not available for inspection, sale, rental or lease when in fact it is available to such person.

151.    Furthermore, NYC Admin. Code § 8-107(5)(a)(2) provides that it shall be unlawful discriminatory practice for owners and managing agents:

> To declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication…which expresses, directly or indirectly, any limitation, specification or discrimination as to…any lawful source of income…or any intent to make such limitation, specification or discrimination.

152.    Defendants Edgecombe and Livingston Management violated, NYC Admin. Code § 8-107(5)(a)(1)(b) by:

> a.    Sending multiple three-day notices to Plaintiff for arrears that she did not owe, that Defendants had waived in previous stipulations, and that Defendants knew were owed by NYCHA and not Plaintiff;
>
> b.    bringing multiple nonpayment summary eviction proceedings against Plaintiff for rent that was not owed;
>
> c.    bringing multiple nonpayment summary eviction proceedings against Plaintiff despite signing prior so-ordered stipulations acknowledging that the rent sought was not owed;

d.      bringing multiple nonpayment summary eviction proceedings against Plaintiff seeking NYCHA Section 8 portions of the rent; and

e.      illegally bringing multiple nonpayment summary eviction proceedings in violation of the Williams Consent Judgment.

153.    Defendant Livingston Management violated NYC Admin. Code § 8-107(5)(a)(1)(a) and (c), as well as § 8-107(5)(a)(2) by sending Plaintiff a letter dated February 19, 2016 stating that her lease would not be renewed because she received a Section 8 voucher.

154.    As a result of these violations, Plaintiff suffered actual damages, including travel costs to housing court and emotional distress.

155.    Accordingly, Respondent is entitled to compensatory damages pursuant to NYC Admin Code § 8-120(a)(8) and reasonable fees and costs pursuant to § 8-120(a)(10), and further demands that civil penalties be imposed pursuant to § 8-126.

## JURY DEMAND

156.    Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff seeks

A.  A declaration that Defendants have committed the violations of law alleged in this action;

B.  An order enjoining and directing Defendant to cease violating NY GBL § 349, NYC Admin. Code 27-2004, and NYC Admin. Code 8-107;

C.  Actual and/or compensatory damages;

D.  Statutory damages pursuant to the FDCPA and GBL § 349;

E.  Treble damages pursuant Jud. Law § 487 and GBL § 349;

F.  Civil penalties pursuant to NYC Admin. Code § 8-126;

32

G.  An order awarding disbursements, costs, and attorney's fees pursuant to the FDCPA, NYGBL § 349, NYC Admin Code § 27-2115 and NYC Admin. Code § 8-120;

H.  Pre-judgment and post-judgment interest as allowed by law; and

I.  Such other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:        New York, New York
              February 6, 2018

                        Respectfully submitted,


                        /s/ *Evan Denerstein*
                        Evan Denerstein
                        Carolyn E. Coffey
                        Of Counsel to Jeanette Zelhof, Esq.
                        Mobilization for Justice, Inc.
                        Phone: (212) 417-3760
                        Fax:    (212) 417-3890
                        Email:  edenerstein@mfjlegal.org
                                ccoffey@mfjlegal.org